MARSH, SECRETARY OF STATE OF NEBRASKA, ET AL. *v.* BUCK ET AL.

No. 312.   Argued April 29, 1941.—Decided May 26, 1941.

*Mr. William J. Hotz,* with whom *Messrs. Walter R. Johnson,* Attorney General of Nebraska, *John Riddell,* Assistant Attorney General, *Gordon Diesing* and *William F. Dalton* were on the brief, for appellants.

*Mr. Thomas G. Haight,* with whom *Messrs. Louis D. Frohlich* and *Herman Finkelstein* were on the brief, for appellees.

MR. JUSTICE BLACK delivered the opinion of the Court.

Most of the questions presented by this case are the same as those that were raised in *Watson* v. *Buck, ante,* p. 387. Here, as there, at the request of ASCAP and its co-complainants a federal District Court composed of three judges enjoined various state officials from enforcing a state statute [1] aimed primarily at price-fixing com-

---

[1] Neb. Laws 1937, ch. 138.

binations operating in the field of public performance of copyright music.[2] Here, as there, the complainants alleged, and the defendants denied, that enforcement of the act had been threatened. Here, as there, the court below found that threats had been made, that some of the sections of the act were invalid, that the invalidity of those sections permeated the whole, and that the state officials should be enjoined from enforcing any of the numerous provisions of the act. But, as in the Florida case, the court below proceeded on a mistaken premise as to the rôle a federal equity court should play in enjoining state criminal statutes. Here, there was no more of a showing of exceptional circumstances, specific threats, and irreparable injury than in the Florida case. In his brief in this Court, the Attorney General of Nebraska stated that "Appellants, as law enforcement officers, sincerely hope that no action under this law will be required. None was threatened before nor since the suit was started." With one possible exception, the record bears out the statement of the Attorney General; there was no evidence whatever that any threats had been made, but in his answer the Attorney General stated that he would "enforce the act against the complainant Society . . . [if] the complainant Society would operate in the State of Nebraska in violation of the terms of the statute by conniving and conspiring to fix and determine prices for public performance of copyrighted musical compositions . . ." As we have just held in *Watson* v. *Buck,* it was error to issue an injunction under these circumstances.

In other material respects also, this case is like the Florida case. The court below failed to pass on what we consider the heart of the statute because of what it regarded as the pervading vice of the invalid sections.

---

[2] 33 F. Supp. 377.

But § 12 of the Nebraska statute is similar to § 12 of the Florida statute and provides that "If any section, subdivision, sentence or clause in this Act shall, for any reason, be held void or non-enforceable, such decision shall in no way affect the validity or enforceability of any other part or parts of this Act."  The legislative will is respected by the Supreme Court of Nebraska,[3] and the court below should have followed state law in this regard.  That part of the statute on which the court did not pass—and the part which the Attorney General said he stood willing to enforce if violated—set up a complete scheme for the regulation of combinations controlling performing rights in copyright music.  On the authority of *Watson* v. *Buck,* the decision below is reversed and the cause is remanded with instructions to dismiss the bill.

*Reversed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

---

[3] See *Petersen* v. *Beal,* 121 Neb. 348, 353; 237 N. W. 146, quoting and approving the following excerpt from *Scott* v. *Flowers,* 61 Neb. 620, 622–623; 85 N. W. 857: "The general rule upon the subject is that, where there is a conflict between an act of the legislature and the Constitution of the state, the statute must yield to the extent of the repugnancy, but no further [Citing authorities]. If, after striking out the unconstitutional part of a statute, the residue is intelligible, complete, and capable of execution, it will be upheld and enforced, except, of course, in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder.  In other words, the legislative will is, within constitutional limits, the law of the land, and when expressed in accordance with established procedure, must be ascertained by courts and made effective."