Dorothy F. RODGERS, et al., Plaintiffs,

v.

EIGHTY FOUR LUMBER
COMPANY, Defendant.

JONICO MUSIC, et al., Plaintiffs,

v.

EIGHTY FOUR LUMBER
COMPANY, Defendant.

HARRISON MUSIC CENTER, et
al., Plaintiffs,

v.

EIGHTY FOUR LUMBER
COMPANY, Defendant.

Civ. A. Nos. 84–828, 84–1114
and 84–1944.

United States District Court,
W.D. Pennsylvania.

Sept. 24, 1985.

John Eichleay, Kevin Abbott, Pittsburgh, Pa., for plaintiffs.

Daniel J. Weis, Weis & Weis, Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiffs in these consolidated actions are the registered holders of copyrights and are all members of the American Society of Composers, Authors and Publishers (ASCAP), which has a non-exclusive right to license non-dramatic performances of its members' copyrighted compositions. Plaintiffs have filed three separate actions alleg-

ing 49 counts of wilful copyright infringement by defendant in five of Eighty Four Lumber Company's stores in New York, Illinois, Alabama, California and Texas, and seek a permanent injunction against further infringement, an award of statutory damages for each infringement and an award of costs and reasonable attorneys' fees. Plaintiffs now move for summary judgment and have filed evidentiary material and brief in support thereof. Defendant has opposed plaintiffs' motion with evidentiary material and brief.

■ Summary judgment would be available in a copyright infringement action where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Sailor Music v. The Gap Stores, Inc.,* 516 F.Supp. 923 (S.D.N.Y.1981), *aff'd* 668 F.2d 84 (2d Cir.1981), *cert. denied* 456 U.S. 945, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982). We believe that there is no genuine issue of fact as to liability in this action, and that defendant is liable as a matter of law. The following discussion indicates the basis for our decision to grant in part plaintiffs' motion for summary judgment.

There is no material issue regarding the fact that defendant Eighty Four performed the musical compositions listed in plaintiffs' complaints by transmitting the radio broadcasts over multiple speakers in the five stores specified. Plaintiffs have produced affidavits in support of these facts which are undisputed by defendant.

Rather, defendant's brief narrows its arguments against imposition of liability to two issues: (1) that Eighty Four's performances are exempt under 17 U.S.C. § 110(5), and (2) that the provisions of the Copyright Act of 1976 are beyond the constitutional grant to Congress.

We first consider defendant's exemption argument.

17 U.S.C. § 110 lists and describes certain performances that are exempt and do not constitute a copyright infringement. Subsection (5) describes one of these exemptions as:

... communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—

(A) a direct charge is made to see or hear the transmission; or

(B) the transmission thus received is further transmitted to the public.

Defendant argues that the facts in this case bring its performances within the § 110(5) exemption because: (1) the noise levels in its stores were significant, (2) the sole purpose for using music was to muffle the industrial noise of the work place, and (3) the receiving apparatus was not altered or augmented *for the purpose of* improving the aural quality of the performance for individual members of the public using these areas or to attract the public to its stores. (emphasis added).

■ Accepting the facts in the light most favorable to defendant for purposes of this motion, we do not believe that these facts bring defendant's performances within the § 110(5) exemption especially in light of the additional uncontroverted evidence presented by the plaintiffs. Defendant is, in effect, arguing that since its primary purpose for using the music was to muffle industrial noise for the benefit of employees and not to attract the public to its stores, it should be exempt.[1] We have no doubt that § 110(5) provides no such exemption, and that the purpose for which the music was used is irrelevant to the question of infringement in this case. *See*

---

**1.** Defendant also uses these facts regarding its purpose for playing the music to support the proposition that it did not further transmit the performance to the public. The undisputed evidence of the physical layout and the equipment later described in this opinion make it clear that a commercial sound system was used to trans-

mit the music into public areas from the office where it is received. This is sufficient to satisfy the definition of "transmit" in 17 U.S.C. § 101. *See, also GAP,* 516 F.Supp. at 923; *Hampshire House Publishing Corp. v. Sal and Sam's Rest., Inc.,* Civil Action No. 84–1296 (E.D.La.1985).

*Herbert v. Shanley Co.*, 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511 (1917); *Chappell & Co. v. Middletown*, 334 F.2d 303, (3d Cir. 1964).

The 1976 Copyright Act and particularly the legislative history establish without a doubt the "outer limit" of the § 110(5) exemption in specifics such as physical size of the establishments and the nature of the receiving apparatus. The Conference Report which accompanied the final version of the 1976 Copyright Act indicates:

> It is the intent of the conferees that a small commercial establishment of the type involved in *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 [95 S.Ct. 2040, 45 L.Ed.2d 84] (1975), which merely augmented a hometype receiver and which was not of sufficient size to justify, as a practical matter, a subscription to a commercial background music service would be exempt.

Conf.Rep.U.S.Code Cong. and Admin.News 1976, p. 5816.

> Under the particular fact situation in the Aiken case assuming a small commercial establishment and the use of a home receiver with four ordinary loud speakers grouped within a relatively narrow circumference from the set, it is intended that the performances would be exempt under clause (5). However, the Committee considers this fact situation to represent the outer limit of the exemption, and believes that the line should be drawn at that point....

U.S.Code Cong. and Admin.News, 1976, p. 5700–01; *See, also, The Gap*, 668 F.2d at 86; *Broadcast Music, Inc. v. United States Shoe Corp.*, 211 U.S.P.Q. 43 (C.D. Cal.1980), *aff'd* 678 F.2d 816 (9th Cir.1982).

*Aiken* involved a restaurant with a total of 1055 square feet, only 620 of which were open to the public. *The Gap* store, at 2,769 square feet was found to be of "sufficient size to justify, as a practical matter, a subscription to a commercial background music service," *The Gap*, 516 F.Supp. at 925, and therefore was not exempt. Defendant has indicated that Eighty Four

stores all have public areas in excess of 10,000 square feet.

■ Furthermore, Eighty Four's sound system is more like a commercial sound system than like the "single receiving apparatus of a kind commonly used in private homes ..." described in the statutory exception. Defendant admits that in 1983 it was the corporate policy or practice to use radio broadcasts throughout its stores and that the sound equipment for the stores was centrally purchased. The equipment customarily purchased consisted of radios, speakers, amplifiers and microphones. The radio-and-speaker systems in each store consist of a radio receiver and separate amplifiers, which are located in the office of the store. They are wired to 2 to 5 separate speakers mounted throughout the interior of the commercial area of the store, which is a separate area from the office, and to 1 to 3 separate speakers mounted outside the store. Most of the speakers are located approximately 150 feet away from the radio receiver and amplifier. The systems also contain a public address system. This clearly is not the kind of system commonly used in private homes. Having made these findings we see no reason to consider other arguments on this issue. The § 110(5) exemption does not apply to defendant's performances.

Defendant's constitutional argument contends that the provisions of the 1976 Copyright Act are beyond the constitutional grant of power to Congress as stated in U.S. Const. Art. 1, § 8, Cl. 8:

> To promote the Progress of Science and Useful Acts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

■ We do not agree, and believe that the Supreme Court has made clear that although Congress' power under this clause is limited to action that promotes the useful arts, it is up to Congress to decide the best manner in which this can be accomplished. *Graham v. John Deere Co.*, 383 U.S. 1, 6, 86 S.Ct. 684, 688, 15 L.Ed.2d 545 (1966); *Mitchell Brothers Film Group*

*v. Cinema Adult Theatre*, 604 F.2d 852, 860 (5th Cir.1979). The Copyright Act is an embodiment of such a Congressional decision, *Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184, 1187 (5th Cir.1979), and the Courts' role in judging whether Congress exceeded an Article I power is limited. We do not believe that defendant's arguments provide any basis for a finding that Congress overreached the stated constitutional purpose by enacting this statute.[2]

Since we believe that there is a genuine dispute regarding the wilfulness of the infringement and since this is a factor to be considered by the court in arriving at damages, we will deny plaintiffs' motion for summary judgment on damages.

An appropriate order will issue.

---

**2.** Defendant's reliance on language in *Aiken* is misplaced. The *Aiken* court was involved in statutory interpretation of the 1909 Copyright Act, and never considered the constitutionality of the statute.